UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                :

AEROTEL, LTD., et al.,                     :        03 Civ. 6496 (RJH)
                                                    :

               Plaintiffs,         :

                                                 :      __MEMORANDUM OPINION__

      -against-               :         __AND ORDER__

                                                 :

IDT CORP., et al.,                     :
                      Defendants.    :

                                                 :
------------------------------------------------------------x
                                                 :

AEROTEL, LTD., et al.,                     :        04 Civ. 10292 (RJH)
                                                    :

               Plaintiffs,         :

                                                 :

      -against-               :

PRIMUS TELECOMM. GROUP, INC., et al.,   :
                                                 :

                      Defendants.    :
------------------------------------------------------------x

        Aerotel, Ltd., Aerotel U.S.A., Inc., and Aerotel U.S.A., LLC ("Aerotel") bring

this action against IDT Corp. and affiliates for the infringement of U.S. Patent No.

4,706,275 ("the '275 patent").  Currently outstanding are two motions to dismiss the

complaint pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, one motion

to dismiss the domestic plaintiffs pursuant to Rule 12(b)(1), one motion by defendants for

partial summary judgment, one motion by defendants to disqualify plaintiffs' counsel,

and one motion by defendants to stay the current action.  The two motions to dismiss the

complaint pursuant to Rule 12(b)(1) allege that Aerotel is not the legal owner of the '275

patent and therefore lacks standing to sue for infringement.  The motion to stay seeks to

stay this action pending resolution of litigation now pending in Israel concerning ownership of the invention claimed by the '275 patent.  For the reasons that follow, that motion is DENIED.

## BACKGROUND

Zvi Kamil, an Israeli citizen and the individual listed as the sole inventor of the '275 patent, filed two patent applications in Israel in January and November of 1985.  In November 1985, Kamil also filed an application with the United States Patent and Trademark Office ("the PTO") that resulted in the issuance of the '275 patent.  Kamil assigned all his rights in the invention described in those applications to Aerotel in July 1987, which was listed as the sole owner of the '275 patent when it was issued by the PTO in November 1987.

Other than that it occurred in Israel, there is an endless amount of dispute between the parties as to the details surrounding the conception of Kamil's invention, essentially a calling card system, and Kamil's employment at the time.  The questions of when the invention was conceived, who Kamil was working for at the time, whether the invention fell within the scope of his employer's business, and ultimately, whether Israeli patent law operated to divest Kamil of ownership of the invention, all were discussed in the briefing on the 12(b)(1) motions to dismiss.  It is unnecessary to set out the disputed facts in order to resolve this motion to stay.

However, it is worthwhile to lay out the procedural history of this action and the Israeli litigation.  On August 26, 2003, Aerotel brought the current action against IDT Corp. and affiliates.  The action was stayed from December 2003 until October 2005 pending resolution of a reexamination of the '275 patent by the PTO.  Shortly after the

stay was lifted, defendants filed a Rule 12(b)(1) motion challenging Aerotel's ownership of the '275 patent.  Specifically, the motion alleged that one of Kamil's former employers, Elscint, Ltd. ("Elscint"), acquired ownership of the invention claimed by the '275 patent.  In November 2005, the transitional twenty-year term of the '275 patent expired.  In July 2006, Aerotel filed an Amended Complaint adding additional defendants to the action.  The new defendants filed a Rule 12(b)(1) motion to dismiss in August 2006, also alleging that Elscint was the owner of the '275 patent.  Fact discovery, except for a single non-party deposition, was completed by November 2006.  Finally, by a supplemental submission in December 2006, defendants moved to dismiss the complaint pursuant to Rule 12(b)(1) on the alternate grounds that another of Kamil's former employers, Beta Engineering and Development Ltd. ("Beta"), owned the '275 patent.

Meanwhile, in January 2005 in Israel, Aerotel filed suit against six Israeli companies for infringement of its Israeli patent.  The defendants asserted as a defense that Aerotel did not own the patent, but instead it was owned by another of Kamil's former employers, the Israeli Ministry of Communications.  Aerotel's motion to strike this defense was denied in September 2006 and this decision was affirmed in January 2007.  (Valetta Decl. Ex. A.)  On February 6, 2007, IDT Corp. filed a declaratory judgment action in Israel to determine the proper ownership of the invention claimed by the '275 patent and the Israeli patent, as well as legal ownership of the patents themselves.  IDT Corp. named as defendants Aerotel, Kamil, the Ministry of Communications, Beta, Elscint, and the six defendants in the pending Israeli enforcement action brought by Aerotel.  The following day, IDT Corp. moved to consolidate the two Israeli actions.  Two days later, defendants filed the instant motion to stay.

**DISCUSSION**

Defendants argue in their Rule 12(b)(1) motions that Aerotel does not have legal ownership of the '275 patent, and thus lacks standing to bring this infringement action. In particular, defendants contend that the inventor of the patent, Zvi Kamil, was divested of ownership by Israeli patent law when he conceived of the invention either in 1977 while working for Beta or in 1984 while working for Elscint.  Because Israeli patent law governs the question of ownership, and because there is now pending litigation in Israel concerning the ownership of the invention that is the subject of the '257 patent, defendants request that if the Court declines to grant the 12(b)(1) motions, it stay this proceeding and let the Israeli court resolve the issue of ownership.

Aerotel argues, as it did in its opposition to the Rule 12(b)(1) motions, that defendants may not assert the equitable rights of third parties in a patent as a defense in an infringement action.  Even if defendants could do so, Aerotel again argues that Kamil retained all ownership rights in the invention, properly assigned those rights to Aerotel, and that the PTO correctly issued the patent in Aerotel's name.  Finally, Aerotel argues that a stay of these proceedings is not warranted.  Therefore, Aerotel requests that the Court deny both defendants' motion to stay and Rule 12(b)(1) motions.  The resolution of this motion to stay requires the Court to answer two questions: (1) May the ownership of the '257 patent be examined as a threshold issue?  (2) If so, should the Court stay this proceeding and allow the Israeli court to determine whether Israeli law divested Kamil of ownership of the patent?

I.      **May the Court Examine Aerotel's Ownership of the '257 Patent?**

In order to sue for patent infringement, "the plaintiff must have held legal title to the patent during the time of infringement." *Arachnid, Inc. v. Merit Indus., Inc.*, 939 F.2d 1574, 1579 (Fed. Cir. 1991) (citing *Crown Die & Tool Co. v. Nye Tool & Mach. Works*, 261 U.S. 24, 40–41 (1923); *accord TM Patents, L.P. v. IBM Corp.*, 121 F. Supp. 2d 349, 358 (S.D.N.Y. 2000). Equitable interest in a patent, where legal title is vested in another, is insufficient to provide standing to sue for money damages based on infringement. *Arachnid, Inc.*, 939 F.2d at 1580. The issuance of a patent by the PTO is prima facie proof of the patentee's legal title. *See Astra Aktiebolag v. Andrx Pharms., Inc.*, 222 F. Supp. 2d 423, 514 (S.D.N.Y. 2002) (citing *Electric Auto-Lite Co. v. P. & D. Mfg. Co.*, 78 F.2d 700, 704 (2d Cir. 1935)). The mere recording of an assignment in the PTO, on the other hand, does not establish a valid assignment, or legal title. *TM Patents*, 121 F. Supp. 2d at 365 (citing *Gaia Techs., Inc. v. Reconversion Techs., Inc.*, 93 F.3d 774, 778 n.3 (Fed. Cir. 1996).

Defendants challenge Aerotel's ownership in the patent, and therefore its standing to bring this infringement action, asserting that ownership resides in a third-party. Aerotel argues that defendants are unable to challenge their ownership, whether in a Rule 12(b)(1) motion or a motion to stay, citing the proposition that "a third party's equitable rights in a patent may not be asserted as a defense in an action for infringement brought by the owner of title to the patent." *Mercantile Nat'l Bank of Chicago v. Howmet Corp.*, 524 F.2d 1031, 1034 (7th Cir. 1975); accord *Sigma Eng'g Serv., Inc. v. Halm Instrument Co.*, 33 F.R.D. 129, 130 (E.D.N.Y. 1963) ("[D]efendant infringer could not raise against the holder of the legal title of the patent, the defense of equitable ownership in others.");

*Kahn v. General Motors Corp.*, No. 88 Civ. 2982 (HB), 1994 U.S. Dist. LEXIS 18630,

1995 WL 2135, at *4 (S.D.N.Y. Jan. 3, 1995) ("It would be unfair to allow [infringer] to

hide behind the putative rights of a non party.").

> However, even an infringer may assert that a third party holds *legal title* to a

patent in moving to dismiss a complaint, as legal title by the plaintiff is necessary to have

standing to bring an infringement action.  *See, e.g.*, *H.R. Techs., Inc. v. Astechnologies,*

*Inc.*, 275 F.3d 1378 (Fed. Cir. 2002) (affirming dismissal of infringement action where

assignment to plaintiff failed because assignor never had title to patent); *RAD Data*

*Comm'ns, Inc. v. Patton Elecs. Co.*, 882 F. Supp. 351 (S.D.N.Y. 1995) (dismissing

infringement action where assignment to plaintiff occurred before assignor had title to

patent).  Particularly relevant here, challenges to ownership have been permitted where

an inventor, by contract or under statute, had made a present assignment of future

inventions to a third party before conceiving of the patented invention.  See *FilmTec*

*Corp. v. Allied-Signal Inc.*, 939 F.2d 1568, 1573 (Fed. Cir. 1991); *TM Patents, L.P.*, 121

F. Supp. 2d at 349, 358 (S.D.N.Y. 2000); *Imatec, Ltd. v. Apple Computer, Inc.*, 81 F.

Supp. 2d 471, 481 (S.D.N.Y. 2000).  In such a case, the contract or statute "divests the

inventor-assignor of ownership of the invention and automatically vests ownership of the

invention, when invented, in the assignee."  *Imatec, Ltd.*, 81 F. Supp. 2d at 481 (citing

*FilmTec Corp.*, 939 F.2d at 1573 ("Ordinarily, no further act would be required once an

invention came into being; the transfer of title would occur by operation of law.")).

Therefore, the inventor has no legal title to assign at a future date, and his purported

assignees have no standing to sue for infringement.

The cases cited by Aerotel can be distinguished by the fact that the third party whose rights are asserted by the defendant-infringer had at most had an equitable interest in the patent, not legal title.  *See Mercantile Nat'l Bank of Chicago*, 524 F.2d at 1034 (not permitting defense that "one of the joint inventors breached an equitable duty to assign his interest in the patent to a third party"); *Sigma Eng'g Serv., Inc.*, 33 F.R.D. at 129 (defendant concedes that third party is, at most, an equitable owner based on agreement to assign); *Kahn*, 1995 WL 2135, at *2 (third party holds "at most an equitable title" to the patent).  Thus, the key distinction in whether a court allows the defendants to contest standing based on ownership is whether the relevant statute or contract constitutes a present assignment of future legal title or merely creates an equitable interest.

Section 132 of Israeli patent law states: "An invention by an employee, arrived at in consequence of his service and during the period of his service . . . shall, in the absence of an agreement to the contrary between him and his employer, become the property of the employer."  Israeli Patents Act § 132(a) (Isr.).  This statute appears to automatically vest an employer with legal title to an invention, without any affirmative steps required.  This is similar to government-funded research in the United States, where the government acquires title to a patent in the event the grantee fails to disclose that the patented invention resulted from the grant.  *See Thermalon Indus., Ltd. v. United States*, 34 Fed. Cl. 411, 414 (Fed. Cl. 1995).  Because the statute can operate to divest the inventor of legal ownership of the invention and resulting patents, a defendant-infringer may properly contest plaintiff's standing based on its operation.

Having concluded that the Court may examine whether Israeli law divested Kamil of legal title to the invention claimed by the '257 patent, the Court must now determine

whether it should decide this question of ownership or whether it is proper to stay this proceeding pending its resolution by the Israeli court.

## II.     Foreign Abstention

When examining "procedural issues that are not themselves substantive patent law issues," such as whether to stay a case pending resolution of a foreign proceeding, the Court looks to the law of its own circuit and not the Federal Circuit.  *See Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1328 (Fed. Cir. 2001) (applying Second Circuit law to determine whether to extend comity to the decision of a foreign court concerning ownership of a patent); *see also Linear Products, Inc. v. Marotech, Inc.*, 189 F. Supp. 2d 461, 463 (W.D. Va. 2002) (applying "Fourth Circuit's precedents concerning a district court's discretion to consider a stay" pending resolution of a foreign patent infringement case).

The Court has the inherent power to dismiss or stay an action pending the resolution of a related foreign proceeding.  *See Continental Time Corp. v. Swiss Credit Bank*, 543 F. Supp. 408, 410 (S.D.N.Y. 1982) (citing *Landis v. North Am. Co.*, 299 U.S. 248 (1936)).  "However, a court's discretion is not boundless, but is limited by its 'heavy obligation to exercise jurisdiction' on the one hand, and the need for 'wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation' on the other."  *Advantage Int'l Mgmt., Inc. v. Martinez*, No. 93 Civ. 6227 (MBM), 1994 U.S. Dist. LEXIS 12535, 1994 WL 482114, at *2 (S.D.N.Y. Sep. 7, 1994) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818, 820 (1976)).  Lower courts have looked to Supreme Court precedent concerning the contemporaneous exercise of jurisdiction by federal and state courts, *see*

*Colo. River Water Conser. Dist.*, 424 U.S. 800, to determine the propriety of staying or dismissing a case in favor of a lawsuit pending in a foreign jurisdiction.  *See, e.g.*, *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991).

Factors to be considered include: general concerns of international comity, including whether a disposition in the alternative forum would be given effect by this Court and the relative interests of the two countries; promotion of judicial efficiency, including whether the two actions have parties and issues in common and the possibility of prompt resolution; and considerations of fairness to all parties and possible prejudice to any of them, including the order in which the suits were filed and issues of convenience.  *See Ronar, Inc. v. Wallace*, 649 F. Supp. 310, 318 (S.D.N.Y. 1986); *see also Caspian Invs., Ltd.*, 770 F. Supp. at 884 (considering "the similarity of parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, considerations of fairness to all parties and possible prejudice to any of them, and the temporal sequence of filing for each action."); *Continental Time Corp.*, 543 F. Supp. at 410.

### A.      International Comity

In the context of granting comity to foreign judgments, the Court examines: (1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is repugnant to fundamental United States principles of what is decent and just.  *See Turner Entm't Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1519 (7th Cir. 1994) (citing *Hilton v. Guyot*, 159 U.S. 113, 206 (1895); *Cunard S.S. Co. v. Salen Reefer Serv. AB*, 773 F.2d 452, 457 (2d Cir. 1985) (comity granted where "it is

shown that the foreign court is a court of competent jurisdiction and that the laws and public policy of the forum state and the rights of its residents will not be violated."). Neither side suggests that the Israeli court will not "abide by fundamental standards of procedural fairness" or that a decision by the Israeli court as to ownership of Kamil's invention would violate United States public policy or the rights of the parties. *Cunard S.S. Co.*, 773 F.2d at 457. Therefore, such a decision, if already rendered, would be granted comity. However, no decision as to ownership has yet been issued in any proceeding. "The general rule of comity is that the domestic court should exercise jurisdiction concurrently with the foreign court. . . . Without a final judgment from another court, surrender of jurisdiction is justified only under exceptional circumstances." *Herbstein v. Bruetman*, 743 F. Supp. 184, 187–88 (S.D.N.Y. 1990) (citations omitted); *see also Turner Entm't Co.*, 25 F.3d at 1521 ("[C]ourts regularly permit parallel proceedings in an American court and a foreign court."). Thus, general principles of comity counsel against a stay.

An examination of the relative strengths of American and Israeli interests does not alter this analysis. *See Turner Entm't Co.*, 25 F.3d at 1521 (examining relative strengths of American and foreign interests in discussing international comity (citing *Ronar*, 649 F. Supp. at 218)). While underlying ownership claims raise issues under Israeli laws and affect Israeli parties, the rights Aerotel seeks to protect in the present action arise exclusively under United States patent laws and the United States has a strong interest in enforcing its patent regime. Thus, the relative interests of the two countries is at most neutral as to whether a stay should be granted.

### B. Judicial Efficiency and Similarity of Issues and Parties

It would be inefficient for the same parties to litigate the same issue in two forums, with the attendant inconvenience to the parties, waste of judicial resources, and risk of inconsistent outcomes, provided, as here, that international comity would be extended to the decision by the other court.  If because of similarity between the issues and the parties, the proceedings are duplicative, then it would promote judicial efficiency for one of the two cases not to proceed.  *Compare Ronar, Inc.*, 649 F. Supp. at 319 (refusing to grant stay where "the claims, though partially dependent on certain common factual issues, are ultimately distinct."), *and Herbstein*, 743 F. Supp. at 188 (refusing to grant stay where U.S. and foreign proceeding were based on "two independent causes of action"), *with Advantage International Management, Inc.*, 1994 WL 482114, at *2 (dismissing U.S. action where "the legal issues in the two actions are . . . identical.").

In this action, Aerotel is suing several United States companies for infringement of the '257 patent and defendants, including IDT Corp., interpose a defense that Aerotel does not own the patent.  In the Israeli enforcement action, Aerotel is suing several Israeli companies for infringement of an Israeli patent and defendants also interpose a defense contesting ownership of the patent.  Clearly, there is not a parity of *claims* in the two enforcement actions; the infringement alleged in each action was committed by different defendants, arises from different events, is to be evaluated based on different (albeit virtually identical) patents, and is judged under different legal standards.[1]  While the principal *defense* in each action is similar—that Aerotel, by operation of Israeli patent

---

[1] Even were both proceedings against the same defendants based on the same actions, the different patents and different legal standards would prevent this Court from giving effect to a decision by the foreign court and would be grounds for denying the stay.  *See Linear Prods., Inc.*, 189 F. Supp. 2d at 466 (refusing stay where U.S. court was evaluating infringement of U.S. patent while parallel foreign proceeding was evaluating infringement of Canadian patent).

law, does not own the patent sought to be enforced—there is an important distinction. Defendants in the Israeli action assert that the Israeli Ministry of Communications owns the invention claimed by the patents while defendants in this action assert that it is Elscint or Beta that own the invention. While a decision that any of these three parties *owns* the invention, if given effect in the other litigation, would resolve the question in favor of both sets of defendants, a decision to the contrary would not. Instead, it would merely return the case to the other venue to decide ownership as to the other potential owners as presented as a defense. This would clearly not be an efficient use of judicial resources. The disparity of the defenses, let alone the actual infringement claims in the two enforcement proceedings, therefore cuts strongly against the granting of a stay.

In the Israeli declaratory judgment action, IDT Corp. seeks to have the Israeli court rule on the ownership of the Israeli patent, the United States patent,[2] and the underlying invention as between Aerotel, Beta, Elscint, and the Ministry of Communications. Unlike the Israeli enforcement proceeding, the Israeli declaratory judgment action will decide ownership as between all four potential owners and thus its decision would resolve the ownership defense in both enforcement proceedings. It would promote judicial efficiency to allow the Israeli court to decide who owns the invention and the patents, rather than having that question resolved in all three actions.

Turning to similarity of the parties, only Aerotel, Ltd. is common to both enforcement proceedings. The United States defendants would ordinarily not be bound by a disposition in the Israeli enforcement action to which they were not a party. *See*

---

[2] Aerotel argues that the Israeli court may neither decide the ownership of a United States patent, nor do so by applying foreign law. Aerotel is mistaken on both counts. Ownership of a patent is "not one arising under United States patent laws," and may be decided by a foreign court under foreign law. *See Int'l Nutrition Co.*, 257 F.3d at 1329 (granting comity to French court's determination of ownership of U.S. patent under French contract law).

*Landis*, 299 U.S. at 255 (1936) ("Only in rare circumstances will a litigant in one case be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."). IDT Corp. is a party to the declaratory judgment action, but none of the other defendants are and again would not normally be bound by the Israeli court's decision in that case. However, defendants state explicitly that they agree to be bound by the Israeli court's determination as to ownership of the '257 patent. (Defs.' Mem. of L. 2.) This potentially overcomes the problem of a disparity between the parties between the United States and the two Israeli proceedings. *See Caspian Invs., Ltd.*, 770 F. Supp. at 885 (dismissing U.S. proceeding in reliance on defendants "repeated representations" that it would "be bound by any determination by [foreign] court").[3]

### C. Fairness

Considerations of fairness include: (1) the order in which the suits were filed; (2) the more convenient forum; and (3) the possibility of prejudice to the parties resulting from abstention. *See Ronar*, 649 F. Supp. at 318; *Colo. River Water Conser. Dist.*, 424 U.S. at 818; *see also Turner Entm't Co.*, 25 F.3d at 1521–22. If the domestic action is filed first, it should presumptively be allowed to proceed whether or not the foreign proceeding does. *See Ronar, Inc.*, 649 F. Supp. at 318. However, the priority rule "is to be applied in a pragmatic, flexible matter," looking to "how much progress has been made in the two actions." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 21 (1983). Thus, in *Colorado River*, concerning abstention by a federal court in favor of state proceedings, the federal action was actually filed first, but

---

[3] As to the possibility of prompt resolution of the ownership issue, there is no evidence that Israeli courts will be more or less prompt in deciding the issue.

the Supreme Court pointed out as a factor favoring dismissal the lack of any progress in the federal proceeding.  424 U.S. at 820.

Even applying the first-filed rule flexibly, it is clear that the Court should not stay this case pending resolution of either the Israeli enforcement or declaratory judgment action.  The United States lawsuit was filed in August 2003.  The enforcement action was not filed until January 2005 and the declaratory judgment action was not filed until February 2007.  It is also clear that the declaratory judgment action was filed as a reaction to the issues raised in this lawsuit.  Defendants cannot rely on a lawsuit in a foreign jurisdiction, filed three and a half years after the pending action, as a basis for staying the domestic action.  Even if both proceedings are at similar stages in deciding the issue of ownership (or lack of ownership by Aerotel) of the invention underlying the Israeli and '257 patents, it would be unfair and inequitable to plaintiffs to stay this proceeding.  Thus, the priority rule cuts strongly against granting the stay; this proceeding should presumptively be allowed to proceed.

With respect to convenience, the Court would ordinarily conclude that Israel provides the more convenient forum to litigate the issue of ownership.  All the potential owners, including Aerotel, are Israeli entities and all of the relevant events regarding ownership took place in Israel.  However, the normal considerations of convenience are less compelling in light of the fact that discovery in the present action is all but complete.

## CONCLUSION

The Court is mindful that it has a "virtually unflagging obligation . . . to exercise the jurisdiction given" to it, and should stay a proceeding only under "exceptional circumstances."  *Colo. River Water Conserv. Dist.*, 424 U.S. at 817; *Herbstein*, 743 F.

Supp. at 188. While several factors discussed above support the granting of a stay, they do not amount to exceptional circumstances. To the contrary, the disparity of issues precludes granting a stay in favor of the Israeli enforcement proceeding, and the first filed rule weighs heavily against granting a stay in favor of the Israeli declaratory judgment action. Therefore, defendants' motion to stay **[136]** is DENIED.

SO ORDERED.

Dated: New York, New York
May 4, 2007

Richard J. Holwell
United States District Judge